806 P.2d 413

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Lacey SIVAK, Defendant–Appellant.**

No. 17797.

Supreme Court of Idaho.

Dec. 31, 1990.

Rehearing Denied March 25, 1991.

Seiniger, Nevin, Kofoed and Herzfeld, Boise, for defendant-appellant. David Z. Nevin, argued.

Jim Jones, Atty. Gen., and Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent. Lynn E. Thomas, argued.

JOHNSON, Justice.

This is a death penalty case that has been the subject of two prior appeals to this Court. *State v. Sivak*, 105 Idaho 900, 674 P.2d 396 (1983) (*Sivak I*) and *Sivak v. State*, 112 Idaho 197, 731 P.2d 192 (1986) (*Sivak II*). In *Sivak I*, this Court upheld both of Sivak's convictions for first degree murder and the death sentence imposed by the trial court. In *Sivak II*, this Court vacated the trial court's death penalty sentence and remanded the case for resentencing. Following the remand in *Sivak II*, the trial court again sentenced Sivak to death.

Because we conclude that the trial court failed to weigh the aggravating and mitigating circumstances as required by this Court in *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989), we again vacate the sentence and remand the case to the trial court for resentencing. We also:

1. give the trial court instructions to guide the trial court on resentencing concerning the victim impact statement made by the husband of the deceased victim;

2. hold that it was proper for the trial court to consider (a) statements made by a representative of the deceased victim's employer, (b) evidence concerning Sivak's activities after his conviction and before the trial court resentenced him, and (c) evidence presented in prior sentencing hearings;

3. conclude that I.C. § 19–2515(c) does not violate the eighth amendment; and

4. reject the other arguments made by Sivak on this appeal as having previously been resolved in *Sivak I* and *Sivak II*.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

*Sivak I* and *Sivak II* state the background of this case and the prior proceedings up to the resentencing directed in *Sivak II*.

In resentencing Sivak following the remand in *Sivak II*, the trial court considered testimony from prior hearings in this case, including testimony by the husband of the deceased victim and testimony by the representative of the employer of the deceased victim. The husband described the impact of the victim's death on her family and stated that if he were in a position to pass sentence on Sivak, the sentence would be death. The representative of the employer described the effect on the local gasoline station industry of the manner in which the victim was killed.

In resentencing Sivak following the remand in *Sivak II*, the trial court also considered mitigating circumstances concerning Sivak that occurred during his incarceration following his conviction. The trial court also considered evidence offered by the state of the concealment by Sivak of a dangerous weapon in his cell during his imprisonment.

In resentencing Sivak to death, the trial court found "that the mitigating circumstances do not outweigh the gravity of the aggravating circumstances so as to make unjust the imposition of the death penalty."

Sivak appealed not only the death sentence imposed by the trial court following the remand in *Sivak II*, but also his conviction, raising several issues that were resolved by this Court in *Sivak I* and *Sivak II*.

## II.

### THE TRIAL COURT DID NOT WEIGH THE AGGRAVATING AND MITIGATING CIRCUMSTANCES AS REQUIRED IN *STATE V. CHARBONEAU*.

In *State v. Charboneau*, decided by this Court on April 4, 1989, more than five

months after the trial court's resentencing of Sivak following the remand in *Sivak II*, this Court held that "the trial court may sentence the defendant to death, only if the trial court finds that all the mitigating circumstances do not outweigh the gravity of each of the aggravating circumstances found and make imposition of death unjust." 116 Idaho at 153, 774 P.2d at 323. It is clear that the trial court in resentencing Sivak to death did not weigh all the mitigating circumstances against each of the aggravating circumstances separately as required by Charboneau. We understand that at the time of resentencing the trial court did not have the benefit of our opinion in *Charboneau*. Nevertheless, we have no alternative but to vacate the death sentence and remand for resentencing as we did in *State v. Fain*, 116 Idaho 82, 100, 774 P.2d 252, 270 (1989). We instruct the trial court to weigh the aggravating and mitigating circumstances as required by *Charboneau* when resentencing Sivak.

## III.

### THE TRIAL COURT SHOULD NOT HAVE CONSIDERED THE VICTIM IMPACT STATEMENT OF THE DECEASED VICTIM'S HUSBAND.

■ Sivak asserts that the trial court should not have considered the testimony of the deceased victim's husband concerning the impact of the victim's death on her family and his recommendation of the death penalty. We agree.

It is clear that this testimony was prohibited by *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) and by *Charboneau*, 116 Idaho at 149–50, 774 P.2d at 319–20. Although we have now adopted the harmless error rule with regard to the use of victim impact statements (*State v. Paz*, 118 Idaho 542, 798 P.2d 1 (1990)), we advise the trial court of our view of the impropriety of the consideration of this evidence, in order to avoid the necessity of reviewing this matter if another appeal results in this case.

## IV.

### UNDER SIVAK II, IT WAS PROPER FOR THE TRIAL COURT TO CONSIDER THE TESTIMONY OF THE REPRESENTATIVE OF THE DECEASED VICTIM'S EMPLOYER.

■ Sivak also asserts that the trial court should not have considered the testimony of the representative of the deceased victim's employer as to the impact of the manner of the victim's death on the local gasoline station industry. We disagree.

This testimony concerned the security measures that employers and their employees were considering taking to protect themselves against incidents similar to the one that led to the murder in this case. In *Sivak II*, this Court specifically rejected a challenge to the consideration of this testimony on the grounds that it did not violate Sivak's rights to due process of law, to a fair sentencing trial or to be free from cruel and unusual punishment. 112 Idaho at 213, 731 P.2d at 208.

Sivak would have us characterize this testimony as a "victim impact statement" in order to avoid the ruling on this issue in *Sivak II* and to apply the rule in *Booth v. Maryland*. This we are unable to do. The victim impact statement in *Booth* was one required by statute and contained only two types of information:

First, it described the personal characteristics of the victims and the emotional impact of the crimes on the family. Second, it set forth the family members' opinions and characterizations of the crimes and the defendant.

482 U.S. at 502, 107 S.Ct. at 2533, 96 L.Ed.2d at 448.

The testimony of the employer's representative here was not a victim impact statement in the sense referred to in *Booth*. It related to the impact on society, not to the impact on the victim and the victim's family. Under the rule of stare decisis, we must follow the ruling on this issue in *Sivak II*, unless it is "manifestly wrong" or "has proven over time to be unjust or unwise," or unless departure from *Sivak II* is " 'necessary to vindicate

plain, obvious principles of law and remedy continued injustice.'" *Bethke v. Idaho Sav. & Loan Association,* 93 Idaho 410, 413, 462 P.2d 503, 506 (1969); *Salinas v. Viestra,* 107 Idaho 984, 990, 695 P.2d 369, 375 (1985); *State v. Guzman,* Idaho, Supreme Court No. 17716 (filed Nov. 19, 1990).

The United States Supreme Court has not extended the rationale of *Booth* to prohibit the consideration in a death penalty sentencing of information concerning harm to the public occasioned by a murder. The dissents in *Booth* make it clear to us that the Supreme Court was sharply divided in that case concerning the extension of the coverage of the eighth amendment to prohibit this type of evidence. In dissent, Justice White, with whom Chief Justice Rehnquist and Justices O'Connor and Scalia joined, said:

> It is no doubt true that the State may not encourage the sentencer to rely on a factor such as the victim's race in determining whether the death penalty is appropriate. But I fail to see why the State cannot, if it chooses, include as a sentencing consideration the particularized harm that an individual's murder causes to the *rest of society* and in particular to his family.

482 U.S. at 517, 107 S.Ct. at 2540, 96 L.Ed.2d at 457–58 (White, J., dissenting) (emphasis added) (citation omitted) (footnote omitted).

We cannot predict whether or not the Supreme Court will extend the rationale of *Booth* to prohibit testimony such as that of the representative of the victim's employer. All we can say is that the Supreme Court has not yet done so. On remand, we caution the trial court to consider carefully the significance of the testimony of the representative of the victim's employer in deciding whether to give it any weight in resentencing Sivak. In order to clarify the record for this Court and for the federal courts in the event of the review of this case following resentencing, we instruct the trial court to state specifically whether this testimony was considered in resentencing Sivak.

### V.

### THE TRIAL COURT PROPERLY CONSIDERED THE EVIDENCE PRESENTED IN PRIOR SENTENCING HEARINGS.

■ Sivak asserts that in resentencing Sivak following the remand in *Sivak II* the trial court should not have considered the evidence presented in prior sentencing hearings. We disagree.

The remand by this Court in *Sivak II* was for resentencing consistent with our opinion. While we directed the trial court to allow Sivak to present additional mitigating evidence, we did not direct that the entire sentencing process be repeated. Except as we have noted above, the consideration by the trial court of the evidence presented in prior sentencing hearings was proper.

### VI.

### I.C. § 19–2515(C) DOES NOT PRECLUDE THE INDIVIDUALIZED SENTENCING REQUIRED BY THE EIGHTH AMENDMENT.

■ Sivak asserts that I.C. § 19–2515(c) precludes the individualized sentencing required by the eighth amendment. We disagree.

I.C. § 19–2515(c) provides:

> (c) Where a person is convicted of an offense which may be punishable by death, a sentence of death shall not be imposed unless the court finds at least one (1) statutory aggravating circumstance. Where the court finds a statutory aggravating circumstance the court shall sentence the defendant to death unless the court finds that mitigating circumstances which may be presented outweigh the gravity of any aggravating circumstance found and make imposition of death unjust.

Citing *Jurek v. Texas,* 428 U.S. 262, 271, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929, 938 (1976), Sivak argues that this statute is an inadequate vehicle for fulfilling the constitutional obligation to allow capital sentenc-

ers "to consider on the basis of all relevant evidence not only why a death sentence should be imposed, but also why it should not be imposed." The bases of Sivak's argument are: (1) the statute places the burden of proof on the defendant, and (2) it includes a mandatory presumption that death "shall" be imposed unless mitigation is found to outweigh aggravation *and* is found to make imposition of death unjust.

This Court has previously rejected the argument that I.C. § 19–2515(c) violates the eighth amendment because it places the burden on a defendant to prove the existence of mitigating circumstances that outweigh any aggravating circumstance that is found. *State v. Charboneau*, 116 Idaho 129, 154, 774 P.2d 299, 324 (1989). In *Charboneau*, this Court said:

> I.C. § 19–2515(c) presumes that a life sentence is the sentence for first degree murder. Only if at least one of the aggravating circumstances listed in I.C. § 19–2515(g) is found to exist beyond a reasonable doubt may a sentence of death be imposed. It is only then that a defendant has the burden of coming forward with mitigating circumstances.

*Id.*

■ The burden on the defendant to present mitigating circumstances arises only if the prosecution proves beyond a reasonable doubt that at least one of the statutory aggravating circumstances exists. As this Court said in *State v. Osborn*, 102 Idaho 405, 417, 631 P.2d 187, 199 (1981): "The defendant's burden is merely to raise, in the aggravation-mitigation hearing, any factors which might possibly tend to mitigate his culpability for the offense." If no mitigating circumstances are presented to the trial court, the court is required to impose the death penalty. If mitigating circumstances are presented to the court, the court may sentence the defendant to death, only if the court finds that all the mitigating circumstances do not outweigh the gravity of each of the aggravating circumstances found and make imposition of death unjust. *Charboneau*, 116 Idaho at 153, 774 P.2d at 323.

Sivak argues that if at least one of the aggravating circumstances specified in I.C. § 19–2515 is found to exist the death penalty must be imposed unless the court finds that the mitigating circumstances make imposition of death unjust. Sivak contends that this empowers the sentencing judge to sentence the defendant to death, even if the mitigating circumstances outweigh each of the aggravating circumstances.

Under this interpretation of the last sentence of I.C. § 19–2515(c), if the trial court finds that the mitigating circumstances outweigh each of the statutory aggravating circumstances that are found, the court must then determine whether the imposition of the death penalty would be unjust. Conversely, if the trial court finds that the mitigating circumstances do not outweigh at least one of the statutory aggravating circumstances found, the death penalty may not be imposed.

The state contends in its brief that the ordinary meaning of the last sentence of I.C. § 19–2515(c) "is that the weight of extenuating circumstances would automatically make imposition of the death penalty unjust in cases where the mitigation was more compelling than aggravation." Under this interpretation, the trial court is required only to determine whether the mitigating circumstances outweigh each of the statutory aggravating circumstances found. The result of this weighing determines whether the imposition of the death penalty is unjust. If the mitigating circumstances outweigh each aggravating circumstance found, the imposition of the death penalty would be unjust. If the mitigating circumstances do not outweigh each aggravating circumstance found, the imposition of the death penalty is just.

■ At first blush, the state's interpretation of I.C. § 19–2515(c) would appear to make the words "and make imposition of death unjust" surplusage. Ordinarily, we must construe a statute to give effect to all of its parts, if we can, and not construe it in a way that makes mere surplusage of one of its provisions. *State v. Alkire*, 79 Idaho 334, 338, 317 P.2d 341, 343–44 (1957); *Hartley v. Miller–Stephan*, 107 Idaho 688,

690, 692 P.2d 332, 334 (1984) (overruled on other grounds, *Archer v. Bonners Ferry Datsun,* 117 Idaho 166, 786 P.2d 557 (1990)). However, there is another principle of statutory construction that must be considered here. Criminal statutes must be strictly construed. *Charboneau,* 116 Idaho at 153, 774 P.2d at 323 (citing *State v. Thompson,* 101 Idaho 430, 437, 614 P.2d 970, 977 (1980)). In *Thompson,* the Court said: "This principle extends not only to the elements of the substantive crime, but also to the sanctions potentially involved." 101 Idaho at 437, 614 P.2d at 977.

Construing the last sentence of I.C. § 19–2515(c) strictly in favor of defendants in death penalty cases, we accept the interpretation advanced by the state. If the trial court finds that the mitigating circumstances presented outweigh each statutory aggravating circumstance found, the imposition of the death penalty would be unjust.

We also reconfirm the conclusion we reached in *Charboneau* that I.C. § 19–2515(c) does not violate the eighth amendment. No particular formula for considering mitigating circumstances is compelled by the eighth amendment. This is borne out by the recent decision of the Supreme Court in *Walton v. Arizona:*

> Walton insists that because § 13–703(E) provides that the court "shall" impose the death penalty if one or more aggravating circumstances are found and mitigating circumstances are held insufficient to call for leniency, the statute creates an unconstitutional presumption that death is the proper sentence. Our recent decisions in *Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), and *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), foreclose this submission. *Blystone* rejected a challenge to a jury instruction based on a Pennsylvania statute requiring the imposition of the death penalty if aggravating circumstances were found to exist but no mitigating circumstances were present. We pointed out that "[t]he requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence," 494 U.S., at ——, 110 S.Ct., at 1083 (footnote omitted), and concluded that because the Pennsylvania statute did not preclude the sentencer from considering any type of mitigating evidence, *id.,* at ——, ——, 110 S.Ct., at 1083, 1084, it was consonant with that principle. In addition, the Court concluded that the statute was not "impermissibly 'mandatory'" as that term was understood: in *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), and *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), because it did not automatically impose death upon conviction for certain types of murder. 494 U.S., at ——, 110 S.Ct., at 1084. The same is true of the Arizona statute.
>
> Similarly, *Boyde v. California, supra,* upheld a pattern jury instruction which stated that "[i]f you conclude that the aggravating circumstances outweigh the mitigating circumstances, you shall impose a sentence of death." See 494 U.S., at ——, 110 S.Ct., at 1195 (emphasis omitted). The Court specifically noted that "there is no ... constitutional requirement of unfettered sentencing discretion in the jury, and States are free to structure and shape consideration of mitigating evidence 'in an effort to achieve a more rational and equitable administration of the death penalty.'" *Id.,* at ——, 110 S.Ct., at 1196 (quoting *Franklin v. Lynaugh,* 487 U.S. 164, 181, 108 S.Ct. 2320, 2331, 101 L.Ed.2d 155 (1988) (plurality opinion)).
>
> Walton's arguments in this case are no more persuasive than those made in *Blystone* and *Boyde.*

—— U.S. ——, ——, 110 S.Ct. 3047, 3056, 111 L.Ed.2d 511, 527 (1990).

Following the rationale of the Supreme Court in *Walton,* we conclude that Sivak's arguments in this case are no more persuasive than those made in *Walton.* I.C. § 19–2515(c) does not preclude the trial court from considering any type of mitigating evidence, nor does it require the trial court automatically to impose death upon a

defendant who has been convicted for certain types of murder. The statute allows the trial court to exercise its discretion within the structure established by the legislature for considering mitigating circumstances. The Supreme Court has said the eighth amendment requires no more.

## VII.

### THE OTHER ISSUES RAISED BY SIVAK HAVE PREVIOUSLY BEEN RESOLVED AND WILL NOT BE RECONSIDERED.

Sivak asks us to reconsider our prior rulings in *Sivak I* and *Sivak II* on a wide range of issues. We decline to do so. The remand in *Sivak II* was only for the purpose of resentencing, not to allow Sivak to begin again his assault on his conviction.

## VIII.

### CONCLUSION.

We vacate the death sentence imposed on Sivak and remand for resentencing in accordance with the instructions contained in this opinion.

BAKES, C.J., BOYLE, J., and BECKER, J. Pro Tem., concur.

BISTLINE, Justice, concurring in parts II, III and VI, and dissenting from parts IV, V, and VII.

The majority properly concludes that Sivak's sentence must be vacated and the case remanded for resentencing. While agreeing with the core of the majority opinion, I have reservations concerning the majority's reference to the harmless error rule in part III, and also am unable to agree with parts IV, V, and VII.

### VICTIM IMPACT STATEMENTS AND HARMLESS ERROR

In part III the majority states that the trial court at sentencing should not have considered the testimony of the deceased victim's husband as this type of testimony was clearly prohibited by *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and by *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989). The trial court is advised to not consider this evidence on remand, but at the same time the Court notes that consideration of such evidence might be harmless error in light of *State v. Paz*, 118 Idaho 542, 798 P.2d 1 (1990).

Justice Johnson, here writing for the majority, heretofore registered his disagreement with the application of the harmless error rule to victim impact statements in capital murder cases in *State v. Paz:*

> In *State v. Charboneau*, 116 Idaho 129, 149, 774 P.2d 299, 319 (1989), in vacating a death sentence, in part because it was a violation of the hearsay rule for the trial court to admit a letter written by the victim's father, I said:
>
>> In a matter as awesome as the decision to impose the death penalty, a *strict compliance* with the procedures for sentencing is required. Even a well intentioned and conscientious effort by the trial court to avoid considering the hearsay contained in the letter does not suffice. (Emphasis added.)

*Paz*, 118 Idaho at 563–64, 798 P.2d at 22–23 (Johnson, J.). My dissent in *Paz* pointed out that "[p]ermitting errors in capital cases to be reviewed under the harmless error standard will only accentuate the problem, with lack of guidance for district judges...." 118 Idaho at 562, 798 P.2d at 21. As a generality, the exercise of the harmless error rule must be restrained where it tends to impermissibly erode constitutional rights. As a specific, that rule is wholly inappropriate when applied to victim impact statements. ,

### VICTIM IMPACT STATEMENT OF THE DECEASED VICTIM'S EMPLOYER

Part IV of the majority opinion holds that the trial court properly considered the impact statement made by the deceased victim's employer. However, United States Supreme Court precedent requires that the sentencer be precluded from considering such testimony of the deceased victim's employer. *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).

*Booth* held that the introduction of a victim impact statement at the sentencing phase of a capital murder trial violated the Eight Amendment. *Booth* concerned only statements made by the victim's family. The logic of *Booth* applies with equal force to an impact statement made by a victim's employer as to the impact upon him of the murder of his employee.

The Supreme Court stated that a jury in a capital murder sentencing is "required to focus on the defendant as a 'uniquely individual human being.'" *Booth*, 482 U.S. at 505, 107 S.Ct. at 2534 (citation omitted).[1] The Court went on to explain how a victim impact statement diverted a jury from a proper focus:

> The focus of a VIS, however, is not on the defendant, but on the character and reputation of the victim and the effect on his family. These factors may be wholly unrelated to the blameworthiness of a particular defendant. As our cases have shown, the defendant often will not know the victim, and therefore will have no knowledge about the existence or characteristics of the victim's family. Moreover, defendants rarely select their victims based on whether the murder will have an effect on anyone other than the person murdered. Allowing the jury to rely on a VIS therefore could result in imposing the death sentence because of factors about which the defendant was unaware, and that were irrelevant to the decision to kill. *This evidence thus could divert the jury's attention away from the defendant's background and*

*Sivak I*, 105 Idaho at 918, 674 P.2d at 414 (emphasis supplied, and with justifiable pride). Mr. Sattler, the victim's employer, was questioned by the prosecutor in open court:

> Q: Mr. Sattler, if you were in a position to pass down a sentence in this case, what would that sentence be?
> A: My personal opinion?
> Q: Yes.
> A: I'd hang him.
> MR. HARRIS: That's all I have Judge.

*Sivak I*, 105 Idaho at 919, n. 6, 674 P.2d at 415.

The victim's husband was likewise called to the stand by the prosecutor to describe the effect the murder had on the family, the father and three children ages 12, 13, and 19. My further comments are there, in 105 Idaho at 908–21, 674 P.2d at 404–17. *Sivak II* followed *Sivak I* by three years. Justice Huntley was again the only support for my views. Of the three who were not interested, not one wrote a single word attempting to challenge or explain away the views of Justice Huntley and myself.

Because of the Court's obduracy, it continued ruling against Sivak's contentions, consistently. The result could not help but have had a devastating impact on Sivak. It is true that he was involved in the homicide as also was Randall Bainbridge, but, to my mind, it may come within the scope of cruel and inhuman punishment to incarcerate any person for almost ten years while all the time suspended over his head is the sword of Democoles waiting to execute him. The point I make is that this Court's pattern of erring in Sivak's appeal continues to prolong the agony. When Sivak eventually gets a final decision from this Court, one which is free from error, and therefore final, then follows his *habeas corpus* route through the federal courts, it is reasonable to believe that if Sivak one day is executed, he very well may have by that time served fifteen years on death row.

---

1. *Booth* involved a Maryland case in which the death penalty sentencing was done by a jury. In *State v. Charboneau*, 116 Idaho 129, 150, 774 P.2d 299, 320 (1989), this Court held that *Booth* applied to Idaho death penalty cases even though sentencing is by a judge rather than a jury. Justice Johnson sees the Idaho rule of *stare decisis* as compelling the Court to abide by its language in *Sivak II*, 112 Idaho 197, 731 P.2d 192 (1986). That view is justified. But when *Booth* arrived on the scene in 1987, a year after *Sivak II*, it occurs to me that *Booth*, based on provisions of the Constitution of the United States, preempts the field and nullifies *Sivak II*.

The High Court's *Booth* opinion was indeed welcome. The High Court in 1987 ruled out the use of victim impact statements. This was four years after this one member of the Idaho Supreme Court "ruled" against them, with as much effect as the whispering wind. Accordingly, it was with both relief and gratification that I welcomed *Booth*. Somehow the High Court had a much easier time in gaining the attention of some members of the Court, as constituted at that time, than my efforts had produced. Only Justice Huntley took notice of what I had written.

Today's opinion for the Court has produced the motivation to revisit *Sivak II*, which in turn resulted in turning again to *Sivak I*. At *Sivak I*, 105 Idaho 900, 674 P.2d 396, appears the following passage:

> I am also greatly troubled by some of the testimony that was offered and accepted at the 'live' portion of Sivak's sentencing hearing. In particular, there was little reason or justification for the prosecutor to put on the stand a Mr. Frank Sattler. His testimony, in my view, transgresses beyond that which a sentencing jury, or judge, should hear—*having nothing to do with the circumstances of the crime of the character of the defendant.*

record, *and the circumstances of the crime.*

482 U.S. at 504–05, 107 S.Ct. at 2534 (emphasis supplied).

An employer victim impact statement has the same diverting effect as a family victim impact statement. The focus of the sentencer is diverted from the defendant to the business of the victim's employer. The employer's ability to attract employees may be wholly unrelated to the blameworthiness of the defendant. It is improbable that a defendant would be aware of or consider the ensuing detriment to an employer's business in undertaking criminal activity which results in the murder of a person who happens to be an employee. As the Supreme Court stated in *Booth,* the use of a victim impact statement "creates an impermissible risk that the capital sentencing decision will be made in an arbitrary manner." 482 U.S. at 505, 107 S.Ct. at 2534. This is as equally true when the statement is made by a surviving family member as when it is that of an employer.

The Supreme Court in *Booth* explained its holding:

> [In this case] the family members were articulate and persuasive in expressing their grief and the extent of their loss. But in some cases the victim will not leave behind a family, or the family members may be less articulate in describing their feelings even though their sense of loss is equally severe. The fact that the imposition of the death sentence may turn on such distinctions illustrates the danger of allowing juries to consider this information. Certainly the degree to which a family is willing and able to express its grief is irrelevant to the decision whether a defendant, who may merit the death penalty, should live or die.

482 U.S. at 505, 107 S.Ct. at 2534. Likewise, the imposition of the death penalty should not turn on whether the victim leaves behind an employer who is sufficiently interested to testify in behalf of imposing a death sentence.

*Booth* also points out that the worth of the victim should not be the distinguishing factor in determining whether or not the death sentence should be imposed:

> Nor is there any justification for permitting such a decision to turn on the perception that the victim was a sterling member of the community rather than a questionable character. This type of information does not provide a 'principled way to distinguish [cases] in which the death penalty was imposed, from the many in which it was not.' *Godfrey v. Georgia,* 446 U.S. 420, 433, 100 S.Ct. 1759, 1767, 64 L.Ed.2d 398 (1980).

*Booth,* 482 U.S. at 506, 107 S.Ct. at 2534. It would be similarly unprincipled to base the death sentence decision on the difficulty which the employer may experience in filling the victim's position. Applying the death sentence in such a manner might mean that the murderer of an unemployed person or a person holding a well-paying, easily filled job would not receive the death sentence while the murderer of a person holding a low-paying, difficult to fill job would receive the death sentence. The harm done to a business is simply not relevant to the awesome decision of death penalty sentencing. Economic loss suffered by an enterprise is insignificant when compared to the factors that are properly considered in the death sentence—the manner in which the life was taken, and the background and criminal record of the defendant.

*Booth* considered the problem of a defendant trying to rebut the prosecution's evidence of victim impact.

> The prospect of a 'minitrial' on the victim's character is more than simply unappealing; it could well distract the sentencing jury from its constitutionally required task—determining whether the death penalty is appropriate in light of the background and record of the accused and the particular circumstances of the crime.

482 U.S. at 507, 107 S.Ct. at 2535. A "minitrial" to consider the views of the employer likewise only serves to divert the sentencer from its proper task, for which reason it should be no part of the sentencing phase in a capital murder trial.

## TESTIMONY FROM PREVIOUS HEARINGS

In part V of its opinion the majority rules that the trial court at resentencing properly considered the evidence presented in prior sentencing hearings in resentencing Sivak. The majority mischaracterizes Sivak's challenge to be that the trial court should not have considered evidence presented in prior sentencing hearings. Sivak does *not* insist that this evidence may not be considered, but, to the contrary, asserts only that such evidence should be freshly presented, rather than having the trial court base its sentencing decision on evidence which it does not hear and which was presented some seven years previously.

Sivak points us to three Arizona Supreme Court cases which support this proposition. In *State v. Arnett*, 125 Ariz. 201, 608 P.2d 778 (1980), the district court on resentencing had relied upon the evidence adduced at prior hearings. Because the defendant did not raise the issue the Court considered the matter waived. Nonetheless, the Court went on to state that:

> We do not believe, however, that this is the better practice. When defendant is to be resentenced, and particularly when the death sentence is possible, it would seem that the evidence and testimony should be as fresh as possible. Relying on a hearing conducted months before the imposition of the death penalty is not recommended.

608 P.2d at 780. That court in two other cases found error in resentencing where evidence adduced at prior hearings was utilized, but concluded that the error was harmless as to both. *State v. Bishop*, 127 Ariz. 531, 622 P.2d 478, 480 (1980) (error harmless because defendant subsequently was able to have the issue of aggravating circumstances presented and reviewed by the trial court); *State v. Smith*, 141 Ariz. 510, 687 P.2d 1265, 1266 (1984) (error harmless because defendant admitted to the aggravating circumstance at the resentencing hearing).

Due process of the law guaranteed by the fourteenth amendment requires death penalty sentencing to subsist of more than a rote rereading of the testimony from a prior, constitutionally defective sentencing hearing. Rather than adding to the problem of the sentencing court being unduly influenced by the record of a prior defective sentencing hearing, it is better policy to require the court to conduct a truly new sentencing hearing with the evidence being presented live in court.

## THE OTHER ISSUES RAISED BY SIVAK NOT CONSIDERED BY MAJORITY

In part VII of its opinion the majority states that all the other issues raised by Sivak were previously resolved in *State v. Sivak*, 105 Idaho 900, 674 P.2d 396 (1983) (*Sivak I*), and *State v. Sivak*, 112 Idaho 197, 731 P.2d 192 (1986) (*Sivak II*), and that the remand in *Sivak II* was only for the purpose of resentencing, not to allow Sivak to again challenge his conviction. Sivak raised eleven issues on the present appeal. The majority addressed but four of them. Two of the remaining issues involved errors made at trial rather than during sentencing; hence the majority properly declined to address them. Of the five remaining sentencing issues, only two were addressed in *Sivak I* or *II* (right to trial by jury on factual issues governing eligibility for death sentence, and the trial court's consideration and reliance in sentencing on an unsworn, extrajudicial statement by Bainbridge, Sivak's codefendant). Three sentencing issues thus raised by the defendant have therefore gone unaddressed. Another sentencing issue which involved Bainbridge's statement should be reconsidered in light of our recent decision in *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989). When the stakes are high, this Court would better fulfill its function by disposing of each and every issue properly raised by the defendant. Moreover, we not only owe that obligation to the instant parties, but to the federal courts who in turn will be called upon to review this Court's handiwork.

## THE CODEFENDANT'S OUT OF COURT STATEMENTS

Though the issue of the codefendant's extrajudicial statement was indirectly addressed in *Sivak I*, 105 Idaho at 906, 674 P.2d at 402,[2] we should reconsider the decision that the trial court did not err in considering and utilizing that statement in light of our more recent and more enlightened decision in *Charboneau.*

In sentencing Sivak to execution, the district judge specifically found and primarily relied upon the "fact" that "[t]he defendant dominates the co-defendant, and is primarily responsible for all that occurred." *Sivak I*, 105 Idaho at 906, 674 P.2d at 402. On direct appeal Sivak argued that this finding was unsupported by the evidence. This Court ruled otherwise by declaring that the finding was supported by an in-depth interview with Sivak's accomplice Bainbridge, which interview was included in the presentence report. 105 Idaho at 906, 674 P.2d at 402. This interview was conducted by a deputy county prosecutor on April 9, 1981, five months before trial, and without Sivak's presence, either in person or by counsel. Bainbridge did not testify at Sivak's trial and was not subjected to cross-examination. Brief of App. 22–23.

In *Charboneau* this Court considered the validity of the sentencing court's receiving in evidence a letter from the victim's father. The letter was offered during the father's live testimony at the hearing, and admitted over objection. 116 Idaho at 136,

774 P.2d at 306. This Court's opinion noted that the presentation of sentencing evidence by live testimony had been demanded pursuant to I.C. § 19–2516, and also observed that the father's testimony in court, fully subject to cross-examination, "did not cure the hearsay nature of the statements [in the letter]." 116 Idaho at 148, 774 P.2d at 318. The Court further noted that in *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983), it had recognized that I.C. § 19–2515(d) provided an exception to I.C. § 19–2516 as to the presentence report. *Charboneau* also noted that I.C.R. 32(e)(1) provides for the inclusion of hearsay in the presentence report, "but only that which the presentence investigator believes is reliable." 116 Idaho at 149, 774 P.2d at 319. Since the letter at issue was not included in the presentence report the Court concluded that its admission was error. Thus in *Charboneau* the Court found reversible error in admitting the writing of a witness who was available for cross-examination, even though the writing was similar to the live testimony given by the witness, and notwithstanding that the district judge expressly denied relying on the letter in arriving at the sentencing decision. 116 Idaho at 148–49, 774 P.2d at 318–19.

By comparison, the codefendant Bainbridge's implication of Sivak was far more unreliable, was not supported by the live testimony of its maker or by any other evidence, but nevertheless played a huge role in Judge Newhouse's decision to sen-

---

2. In *Sivak I* the opinion for the Court did not directly discuss whether it was proper for the trial judge to consider or rely on the co-defendant's statement. It discussed only the issue of whether the trial judge's findings were supported by the evidence. The relevant portion of *Sivak I* follows:

> Appellant [Sivak] cites two of the trial court's findings and argues that they are not supported by the evidence. The allegedly objectionable findings are:
>
> 5....
> a. ... The defendant dominates his co-defendant, and is primarily responsible for all that occurred.
> ....
> 6....
> ....
> d. The defendant, both by prior conduct and conduct in the commission of the murder

> at hand, has exhibited a propensity to commit murder which will probably constitute a continuing threat to society.
>
> The evidence before the trial court was more than sufficient to sustain both of these findings. An in-depth interview of appellant's accomplice was conducted, and was included in the presentence report. It contains references to the relationship between the two, lending support to finding 5a. Finding 6d is supported by evidence of the brutal murder committed by this defendant, by his lack of remorse, willingness to participate in the crime, and by testimony of his prior offer to do violence to and, inferentially, to kill another person other than Dixie Wilson. Because these findings are supported by the evidence, we will not disturb them.

105 Idaho at 906, 674 P.2d at 402. This Court's disposition was much too summary.

tence Sivak to death. Bainbridge's statement had been obtained under questionable circumstances shortly after he was arrested and in custody when he was first confronted with the full impact of the state's accusation that he was guilty of murder. Few aspects of the criminal law are more familiar than the phenomenon of co-defendants who implicate each other. Unlike the victim's father in *Charboneau*, Bainbridge had every reason to lie. Unlike the letter in *Charboneau*, as to which the district court disavowed placing any reliance, Judge Newhouse expressly relied on the Bainbridge statement, as did this Court on direct appeal. *Sivak I*, 105 Idaho at 906, 674 P.2d at 402.

Even though Bainbridge's out of court statements were far less reliable and far more impacting than the father's letter in *Charboneau*, the majority in Sivak declined to rule on the district court error in considering and relying on Bainbridge's statements, or to even address this important issue. That state of obduration continues to this very day.

It could be argued that because the transcript of Bainbridge's statements was stapled at the end of the presentence report, under *State v. Creech*, 105 Idaho 362, 670 P.2d 463, this hearsay was properly considered and relied on by the district judge in sentencing Sivak to death. Such a conclusion, however, *would be misguided.* In *Charboneau* I expressed a view that:

> I remain convinced that the mandate of the legislature expressed in I.C. § 19–2516 and that of the founding fathers expressed in the due process clauses of the state and federal constitutions prohibit the admission of presentence investigation reports obtained by hearsay and containing hearsay.

116 Idaho at 170, 774 P.2d at 340. In *Sivak I* my earlier views were no different:

> The Court simply cannot in any show of conscience continue to let capital sentencing be hinged on unsworn statements and other forms of hearsay. It is now clear that a capital case involves two trials. The first is to try the issue of the accused's guilt. If convicted, the second

is to try the issue of the circumstances of his crime and the facets of his character. Common sense dictates that the second trial for his life is the defendant's more important trial. Can it be then that in Idaho we have a rule that while due process obtains at the guilt trial, anything goes at the second trial which determines the issue of life and death?

105 Idaho at 920, 674 P.2d at 416.

The district court's error in considering and relying on the codefendant's unsworn, out of court statements violated Sivak's right to due process of the law. That violation continues on apparently in perpetuity.

### HEINOUS, ATROCIOUS OR CRUEL

The district judge sentenced Sivak to death on the basis of his finding that the murder was especially heinous, atrocious or cruel, manifesting exceptional depravity. R. Vol. 4, 168. Sivak makes the argument, which the majority declines to address, that Idaho's application of its "heinous, atrocious or cruel" aggravating circumstance violates the eighth amendment.

The United States Supreme Court has held that statutory aggravating circumstances must be given a limiting construction if the state is to meet its obligation to "tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty." *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980). This Court appeared to be attempting to limit its I.C. § 19–2515(g)(5) "heinous, atrocious and cruel" aggravating circumstance with the following construction:

> It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. *What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of*

*capital felonies—the conscienceless or pitiless crime which is unnecessarily torturous to the victim.*

*State v. Osborn,* 102 Idaho 405, 418, 631 P.2d 187, 200 (1981) (emphasis in the original).

My dissent in *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299 (1989), criticized this construction:

The limiting construction given to the (g)(5) aggravating circumstance by *Osborn* and reaffirmed today by the majority, is wholly insufficient to guide the sentencer's discretion in limiting the application of the death penalty consistent with constitutional mandates. Terms beget terms. What is the *"norm"* of capital felonies? Who sets this "norm"? Indeed, *all* first degree murders involve the unlawful killing of another with malice aforethought. What sets this particular murder apart—not from the other crimes—but from the "norm" of *first degree murder?* In a domestic dispute husband kills wife with a gun. Do all such murders now warrant execution? If so, it can hardly be said discretion is limited.

Also, the *Osborn* "limiting" definition of the (g)(5) circumstance provides that the murder must be "unnecessarily torturous to the victim." Clearly, however, this definition is simply duplicative of the (g)(7) circumstance which subjects defendants to death for murder by torture. In the final analysis, *all* first degree murders are "especially heinous, atrocious or cruel, manifesting exceptional depravity." Nothing in the majority's interpretation restricts the broad brush with which the subsection is drawn.

116 Idaho at 171–72, 774 P.2d at 341–42.

Sivak further argues that the district judge should not have made a finding of cruelty when the trial testimony showed that the victim was not conscious when the alleged cruel acts took place. Tr. Vol. III, 318–33, 359, Vol. II, 257, Record of Appeal, *Sivak I,* 105 Idaho 900, 674 P.2d 396. The Arizona Supreme Court has held that the state has an affirmative burden to demonstrate victim consciousness as a predicate to a finding of cruelty. As the Ninth Circuit noted in *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988), "in nearly every case in which a finding of cruelty was reversed, the court concluded only that the prosecution had not proven the victim was conscious." 865 F.2d at 1033 (citing Arizona Supreme Court cases). Idaho should similarly require a showing of victim consciousness as a predicate to a finding of cruelty.

### CRIME WHILE IMPRISONED

During Sivak's sentencing hearing a corrections officer testified that Sivak hid a weapon in his prison cell. Sivak argues that the district judge should not have considered this testimony in sentencing him because the alleged crime of possessing a weapon had not been the subject of a formal prosecution and finding of guilt beyond a reasonable doubt. Sivak cites *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) for the principle that there are limits on the evidence that can be offered to show aggravating factors against a capital defendant:

We think the Georgia court wisely has chosen not to impose unnecessary restrictions on the evidence that can be offered at such a hearing and to approve open and far-ranging argument.... *So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant,* it is preferable not to impose restrictions.

428 U.S. at 203–04, 96 S.Ct. at 2939–40. Sivak argues that evidence of unadjudicated criminal conduct contravenes this requirement found in *Gregg.*

Although this argument certainly merits some consideration, the majority has declined to give it any. Sivak presents a tenable argument that the issue is better resolved in reference to *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). That case held that a sentencing judge has wide discretion in selecting "the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. at 246, 69

S.Ct. at 1082. A sentencing judge is not limited to considering as aggravating factors only those acts for which the defendant has been convicted.