966 P.2d 1

STATE of Idaho, Plaintiff–Respondent,

v.

Thomas Eugene CREECH,
Defendant–Appellant.

Thomas Eugene CREECH,
Petitioner–Appellant,

v.

STATE of Idaho, Respondent.

Nos. 22006, 23482.

Supreme Court of Idaho,
Boise, December 1997 Term.

Aug. 19, 1998.

Rehearing Denied Oct. 23, 1998.

Alan E. Trimming, Ada County Public Defender; August H. Cahill, Jr., Deputy Ada

County Public Defender, Boise, for appellant. August H. Cahill, Jr. argued.

Alan G. Lance, Attorney General; Michaelina B. Murphy, Deputy Attorney General, Boise, for respondent. Michaelina B. Murphy argued.

SILAK, Justice.

This is an appeal from a death sentence imposed upon appellant Thomas Eugene Creech (Creech) entered on April 17, 1995, after his plea of guilty to first degree murder, and an appeal from a denial of his petition for post-conviction relief. A portion of this case is before the Court for mandatory review pursuant to Idaho Code section 19–2827. We affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

On May 13, 1981, while serving a life sentence in the Idaho State Correctional Institution for two counts of first degree murder, Creech killed fellow inmate David Dale Jensen (Jensen). On the day of his death, Jensen made two attacks on Creech. In the first, Jensen attacked Creech with a battery-filled sock. Creech disarmed Jensen. Jensen later attacked Creech with a toothbrush with a razor blade attached to it. Upon this second attack, Creech hit Jensen with the battery-filled sock. The blows to Jensen's head killed him. Part of Jensen's brain had been removed prior to his incarceration, and he had a plastic plate in his skull.

Creech originally pled not guilty to the first degree murder charge, but in late August 1981, Creech requested that he be allowed to change his plea from not guilty to guilty. On August 28, 1981, Creech was present in court. The district judge interrogated Creech and Creech made clear his wish to plead guilty against the advice of his counsel, Rolf Kehne (Kehne). Kehne requested a continuance for a week which was denied. Kehne then requested that he be allowed to withdraw from representing Creech which was also denied. The district court accepted Creech's plea of guilty.

A sentencing hearing was held in January 1982, and the district court thereafter issued its findings sentencing Creech to death. However, because Creech was not present at sentencing, this Court issued an order vacating the sentence and remanding the case to the district court so that the sentence could be imposed in open court with Creech and his counsel present. Pursuant to that order, on March 17, 1983, the district court imposed the death penalty on Creech in the presence of Creech and his counsel. Creech appealed to this Court raising numerous issues. We affirmed Creech=s conviction and the imposition of the death penalty. *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983).

On May 19, 1983, Creech filed a motion to withdraw his guilty plea pursuant to I.C.R. 33(c). Creech raised numerous issues regarding defects in his guilty plea. In January 1984, the district court issued an order stating that the Supreme Court had returned and remitted the case back to the district court, ordered that all post-conviction relief proceedings and all other post-trial motions be filed by February 6, 1984, and that any matters not filed by that date would be deemed waived. Within the time prescribed, Creech renewed his motion to withdraw his guilty plea. Creech cited nine reasons as supportive of his motion to withdraw the plea. No other post-conviction petitions or issues were filed. On February 27, 1984, testimony was heard on that motion. This Court affirmed the district court's denial of the motion in *State v. Creech*, 109 Idaho 592, 710 P.2d 502 (1985). The Court held that the record was sufficient to find that allowing the guilty plea to stand would not be manifestly unjust. *Id.* at 597, 710 P.2d at 507.

Creech next filed a petition for writ of habeas corpus in the United States District Court for the District of Idaho. Relief was denied on June 18, 1986. Creech appealed to the United States Court of Appeals for the Ninth Circuit raising numerous issues. The Court of Appeals reversed the federal district court=s denial of Creech's petition on three grounds: (1) the trial court erred in refusing to allow Creech to present new mitigating evidence at his resentencing hearing on March 17, 1983, which would have per-

tained to Creech's good behavior and peaceful adjustment between the time of his first sentencing in January 1982 and his resentencing in March 1983; (2) at Creech's sentencing hearing, the trial court found two aggravating circumstances without making a required finding beyond a reasonable doubt; and (3) one of the aggravating circumstances applied by the trial court, that Creech demonstrated an "utter disregard for human life," is unconstitutionally vague. *Creech v. Arave,* 947 F.2d 873, 881–85 (9th Cir.1991).

The State of Idaho then appealed to the United States Supreme Court which granted certiorari, limited to the question whether the "utter disregard" aggravating factor, as interpreted by the Idaho Supreme Court in *State v. Osborn,* 102 Idaho 405, 631 P.2d 187 (1981), is unconstitutionally vague. *Arave v. Creech,* 507 U.S. 463, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). The Supreme Court held that the "utter disregard" circumstance, as defined in *Osborn,* on its face meets constitutional requirements. 507 U.S. at 478, 113 S.Ct. 1534. The Court thus reversed, in part, the judgment of the Court of Appeals and remanded for further proceedings. The Court noted that Creech was entitled to resentencing by the state district court pursuant to the Court of Appeals' ruling that the trial judge improperly refused to allow Creech to present new mitigating evidence when he was resentenced in open court. *Id.* at 478–79, 113 S.Ct. 1534.

On April 14, 1993, the United States District Court for the District of Idaho entered an Order on Remand to the Idaho Supreme Court. A resentencing hearing was scheduled before the state district court for December 27, 1993. However, pursuant to a stipulation, the sentencing hearing was continued to March 7, 1994, because Creech could not be fully prepared by the December 27th date. The sentencing hearing was later vacated and rescheduled an additional five times before commencing on March 13, 1995.

On April 21, 1994, Creech renewed his motion to withdraw his guilty plea raising some of the same issues he had raised previously, and raising some new grounds. The district court denied Creech's motion, ruling that whether all these issues had been ruled

on by the district court or not, the motion to withdraw Creech's guilty plea was res judicata since it had previously been ruled on by the district court and the Idaho Supreme Court.

In August 1994, counsel for Creech requested that an updated presentence report be prepared, which the district court allowed. In March 1995, Creech moved to strike portions of the presentence investigation report, but the district court denied the motion. The district court thereafter entered its findings and imposed the death penalty under I.C. § 19–2515. On May 9, 1995, Creech then filed his petition for post-conviction relief which the district court denied.

Creech appeals from both his conviction and the imposition of the death penalty, and from the denial of his post-conviction relief petition. On December 16, 1996, this Court issued an order consolidating these appeals, Supreme Court Docket Nos. 22006 and 23482. A death warrant was issued on January 2, 1997, but was stayed pending this consolidated appeal.

## II.

### ISSUES ON APPEAL

#### DIRECT APPEAL ISSUES

A. Whether the district court committed reversible error by changing its findings in aggravation.

B. Whether the district court committed reversible error by considering evidence of previous hearings.

C. Whether the district court committed reversible error by denying Creech's motion to strike portions of the presentence investigation report.

D. Whether the district court erred in weighing the unconstitutionally vague circumstance propensity to murder, and in finding that Creech "by prior conduct and by conduct in the commission of the murders at hand has exhibited a propensity to commit murder which will probably constitute a continuing threat to society."

E. Whether the "utter disregard" aggravating circumstance relied upon by the district court is unconstitutionally vague and overbroad.

F. Whether the district court's reliance on elements of the offense as statutory aggravating circumstances violated Creech's rights under the Eighth and Fourteenth Amendments.

G. Whether the district court erroneously considered and weighed non-statutory aggravating circumstances against mitigating circumstances.

H. Whether Creech is entitled to a new sentencing hearing because the Idaho capital sentencing scheme unconstitutionally provides a mandatory sentencing formula violative of the Eighth Amendment.

I. Whether Idaho's death penalty scheme violates the Sixth Amendment to the United States Constitution by lack of jury participation.

J. Whether the district court's refusal to consider Creech's reduced capacity to conform his conduct to law due to mental defect and disease requires reversal.

K. Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and Creech.

### III.

### ANALYSIS

A. **The District Court Did Not Commit Reversible Error By Changing A Mitigating Circumstance To An Aggravating Circumstance In Its Findings At Creech's 1995 Resentencing.**

 Creech argues that the district court committed reversible error by significantly changing its findings in support of the death sentence. In its 1982 findings, the district court found that as a mitigating factor, "[Creech] did not instigate the fight with [Jensen], but [Jensen], without provocation, attacked him. [Creech] was initially justified in protecting himself." In its 1995 findings, however, the court found, as an aggravating circumstance, that the murder of Jensen was

planned and executed by Creech. Creech claims that the record fails to show any reason for this change and that the change is in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

In support of his argument, Creech relies on *Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984), which applied the Double Jeopardy Clause to a capital sentencing proceeding. *Rumsey* involved a conviction of first degree murder and an initial sentence of life imprisonment due to the trial court=s finding that no aggravating or mitigating circumstances were present to warrant the imposition of the death penalty. 467 U.S. at 205, 104 S.Ct. 2305. On cross-appeal by the state to the Arizona Supreme Court, however, the court set aside the life sentence and remanded for redetermination of aggravating and mitigating circumstances and for resentencing of the murder conviction, the court having found that the trial court erroneously interpreted the law with respect to one of the statutory aggravating factors. *Id.* at 206–07, 104 S.Ct. 2305. On remand, at the conclusion of a new sentencing hearing, the trial court found present the statutory aggravating factor it had previously misinterpreted, found no mitigating factors and thus sentenced Rumsey to death. *Id.* at 207–08, 104 S.Ct. 2305. The United States Supreme Court, relying on *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), ultimately held that this death sentence violated the Double Jeopardy Clause because Rumsey had initially been sentenced to life imprisonment which was essentially an acquittal on the merits of the central issue of whether death was the appropriate punishment, *i.e.*, that the prosecution had failed to prove its case. Thus, the Court held that this decision barred any retrial of the appropriateness of the death penalty. *Id.* at 211, 104 S.Ct. 2305.

Creech asserts that likewise when a sentencing court finds certain facts in mitigation, the court should be estopped from finding different facts later, and that to do so would violate the Double Jeopardy Clause.

We find *Rumsey* to be inapposite to the case at bar. In the present case, the district

court consistently imposed the death penalty at both the 1982 and 1995 sentencing hearings. The only difference at the second sentencing was that after the court received additional information from the updated presentence report (which was compiled at the request of Creech), it reinterpreted its finding with respect to the circumstances surrounding the attack of Jensen. Pursuant to *Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), we hold that it was not error for the district court to change its finding.

In *Poland,* the trial court sentenced the two Poland brothers to death for first degree murder based on a statutory aggravating factor that the crime was "especially heinous, cruel or depraved." 476 U.S. at 149, 106 S.Ct. 1749. On appeal, the Arizona Supreme Court held that there was insufficient evidence to support the trial court's finding of the "especially heinous" aggravating circumstance, but found that the trial court had misapplied the law when it did not find that the Polands had committed the offense for pecuniary gain, another statutory aggravating factor. *Id.* at 150, 106 S.Ct. 1749. After a new trial, the Polands were again convicted of first degree murder and sentenced to death based upon three aggravating factors found to be present at the second trial. *Id.*

On appeal to the United States Supreme Court, the Polands argued that the Double Jeopardy Clause barred the imposition of the second death sentence because the Arizona Supreme Court had essentially acquitted them of the death penalty by finding that the evidence was insufficient to support the only aggravating circumstance found by the trial court. *Id.* at 155, 106 S.Ct. 1749. The Supreme Court disagreed:

> We reject the ... petitioners' argument ... that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an "acquittal" of that circumstance for double jeopardy purposes. *Bullington* indicates that the proper inquiry is whether the sentencer or reviewing court has "decided that the prosecution has not proved its case" *that the death penalty is appropriate.* [Footnote omitted]. We are

not prepared to extend *Bullington* further and view the capital sentencing hearing as a set of minitrials on the existence of each aggravating circumstance.

*Id.* at 155–56, 106 S.Ct. 1749. (Emphasis in original). The Court thus concluded that the trial court's rejection of the "pecuniary gain" aggravating circumstance in this case was not an "acquittal" of that circumstance for double jeopardy purposes. *Id.* at 156–57, 106 S.Ct. 1749.

In the present case, the United States Supreme Court remanded the case for one reason: to allow Creech to present mitigating evidence at his sentencing hearing which he was not allowed to do at his 1983 hearing. *Creech,* 507 U.S. at 478, 113 S.Ct. 1534. No reviewing court has ever held in this case that the State failed to prove its case that the death penalty was the appropriate punishment. The remand was solely to give Creech the opportunity to provide any new mitigating evidence which may have become available since his initial 1982 sentencing, which was voided by this Court because the district court failed to sentence Creech in Creech's presence. Thus, when the resentencing hearing occurred in 1995, the Double Jeopardy Clause did not bar the trial court from resentencing Creech to death. After considering all of the evidence presented, including the additional evidence set forth in the updated presentence report, the district court simply reinterpreted its earlier mitigation finding that Creech had initially acted in self-defense to one in aggravation, that the attack on Jensen was a ruse and that Creech murdered him with premeditation. This was based on statements made by Creech himself. The district court's reinterpretation has no effect on the first sentence because even then, when this circumstance was considered by the district court to be a mitigating one, the court still sentenced Creech to death pursuant to the other statutory aggravating circumstances present. Thus, we hold that the district court was not barred by the Double Jeopardy Clause from reconsidering existing information, changing mitigating factors and weighing evidence differently at the most recent sentencing.

## B. The District Court Did Not Commit Reversible Error By Considering Evidence Of Previous Hearings.

■ Prior to Creech's resentencing in March 1995, the district court took judicial notice of Creech=s entire file back to 1981. Creech claims that he objected to this and that it was reversible error for the court to have considered evidence adduced at prior hearings.

We find Creech's argument to be without merit for two reasons. First, our review of the record indicates that the only objection made by Creech was to any hearsay evidence contained in the presentence investigation report dated September 1981, not to the sentencing court taking judicial notice of Creech's file. Second, notwithstanding any objection, it was appropriate for the district court to consider the prior evidence in this case. Prior to Creech's resentencing in 1995, he had two previous sentencing hearings for which a presentence investigation report was compiled. From that report, as well as from the testimony, the district court gathered sufficient information to conclude that the imposition of the death penalty was warranted in this case. When the United States Supreme Court remanded this case for another resentencing, it was for the sole purpose of allowing Creech to introduce new mitigating evidence. *See Arave v. Creech,* 507 U.S. 463, 478–79, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). There was no order by the Supreme Court prohibiting the state sentencing court from reviewing prior evidence, information or testimony.

Further, this Court previously considered and rejected a similar argument in *State v. Sivak,* 119 Idaho 320, 806 P.2d 413 (1990).

In that case, we had directed the district court on remand to allow Sivak to present additional mitigating evidence. On appeal after resentencing, this Court held that, contrary to Sivak's argument, so long as the district court could properly weigh the aggravating and mitigating circumstances, consideration of evidence presented at prior hearings was appropriate, for the purpose of the remand was not to repeat the entire sentencing process. *Id.* at 323, 806 P.2d at 416.

Thus, we hold that the district court did not err in considering evidence adduced at previous hearings.

## C. The Issue Whether The District Court Committed Reversible Error By Denying Creech's Motion To Strike Portions Of The Presentence Investigation Report Is Barred By The Doctrines Of Law Of The Case And Res Judicata.

■ Creech argues that the district court erred by denying his motion to strike portions of the presentence investigation report. Creech's motion was filed in response to the district court's pronouncement that it would take judicial notice of Creech's entire file, including presentence reports. Creech moved that any hearsay evidence be stricken from the updated presentence report as it violated his constitutional right to confront and cross-examine the declarants. Creech argued that all evidence at the sentencing hearing should be from "live witnesses" subject to cross-examination.

■ We hold that this issue is barred by the doctrine of law of the case as it has previously been decided by this Court.[1] *See State v. Creech,* 105 Idaho 362, 670 P.2d 463

---

1. The doctrine of "law of the case" is well established in Idaho and provides that

 "upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal ..."

 *Suitts v. First Sec. Bank of Idaho,* 110 Idaho 15, 21, 713 P.2d 1374, 1380 (1985) (quoting *Fiscus v. Beartooth Elec. Coop., Inc.,* 180 Mont. 434, 591 P.2d 196, 197 (1979)). *See also, Creem v. Northwestern Mut. Fire Ass'n,* 58 Idaho 349, 352, 74

P.2d 702, 703 (1937). In other words, "[t]he decision on an issue of law made at one stage of a proceeding becomes precedent to be followed in successive stages of that same litigation." *Sun Valley Ranches, Inc. v. Prairie Power Coop.,* 124 Idaho 125, 129, 856 P.2d 1292, 1296 (Ct. App.1993). Thus, this Court's pronouncements on issues of law set forth in *State v. Creech,* 105 Idaho 362, 670 P.2d 463 (1983), will not be addressed again on this successive appeal.

The doctrine of res judicata is also applicable to certain of the issues raised by Creech on this appeal. This doctrine applies to any issues raised by Creech and adjudicated in his habeas

**10**

(1983). At the commencement of the sentencing hearing in January 1982, the State requested that the district court take judicial notice of the court's entire file, including the 1981 presentence report. Creech objected and argued that the entire sentencing record be produced by live testimony in open court. The district court treated Creech's request as a motion and denied it. On appeal, this Court preliminarily noted that "a sentencing decision made solely on the basis of live testimony is not constitutionally mandated." *Id.* at 365, 670 P.2d at 466. We further noted that "[t]he use of the presentence report over defendant's objection has been upheld, despite the contention that the report contained hearsay." *Id.* (citations omitted). Thus, this Court held that the district court=s admission of the presentence report was not error. *Creech*, 105 Idaho at 368, 670 P.2d at 469. For purposes of the present appeal, we note that although the presentence report was updated for the 1995 resentencing, the only additions were disciplinary offenses committed during Creech's incarceration since 1981. Thus, the updated presentence report was nearly identical to the 1981 report that was the issue of the 1983 *Creech* opinion.

▌ We hold that this issue is also barred by the doctrine of res judicata as the Ninth Circuit Court of Appeals also held that Creech's right to confrontation was not violated by the admission of the presentence report:

> It is apparent [ ] that Creech had the opportunity, other than through cross-examination, to dispute the accuracy of the presentence report prior to and at his January, 1982 sentencing hearing because his counsel was given the report prior to the sentencing hearing.... We conclude that Creech's right to confrontation was not violated in this case.

*Creech v. Arave*, 947 F.2d 873, 880–81 (9th Cir.1991). In denying Creech's motion to strike portions of the presentence report, the district court ruled that Creech had been given "a full opportunity to present favorable evidence; a full and reasonable opportunity to examine all of the materials contained in the presentence report; and a full opportunity to explain and rebut adverse evidence, as required." The court also noted that the updated presentence report had been completed and delivered to Creech's counsel in mid-October 1994, approximately five months prior to the commencement of the resentencing hearing in March 1995.

Creech next argues that the issue was not totally resolved in *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983). He claims that while testimony may be appropriate for non-crucial information in the presentence report, critical information with respect to the consideration of aggravating circumstances must be supported by live testimony. This Court has also previously ruled on and rejected this argument. In *Sivak v. State*, 112 Idaho 197, 731 P.2d 192 (1986), we held:

> [N]ot only is Sivak interpreting *Creech* unreasonably narrowly, but his distinction between "critical" and "non-critical" testimony is unworkable. Whose testimony should be deemed "critical" and at what phase of the defendant's trial? What may be deemed critical to the judge or jury at the guilt phase of a trial may not be critical at the sentencing phase and vice versa.... Therefore, we continue to adhere to our ruling in *Creech* and the position of the United States Supreme Court that the sixth amendment to the United States Constitution does not require that a capital defendant be afforded the opportunity to confront and cross-examine live witnesses in his sentencing proceedings.

*Id.* at 216, 731 P.2d at 211.

Thus, we hold that this issue has been previously decided and will not be reconsidered.

corpus proceeding in the federal courts. Habeas corpus proceedings, like state post-conviction relief proceedings, are separate and distinct proceedings, separate from criminal proceedings, and are civil in nature. *See, e.g., State v. Beam*, 115 Idaho 208, 210, 766 P.2d 678, 680 (1988); *Paradis v. State*, 110 Idaho 534, 536, 716 P.2d 1306, 1308 (1986). Thus, when legal issues are decided in a criminal action on direct appeal, the defendant is barred by the doctrine of res judicata from raising them again in a post-conviction relief proceeding. *State v. Beam*, 115 Idaho at 210, 766 P.2d at 680; *State v. Fetterly*, 115 Idaho 231, 233, 766 P.2d 701, 703 (1988). Similarly, when an issue is decided in a federal habeas corpus proceeding, the doctrine of res judicata applies to prevent the issue from being addressed again by this Court on remand.

**D. The Issue Whether The District Court Erred In Finding That The Aggravating Circumstance "Propensity To Murder" Was Appropriate In This Case Is Barred By The Doctrine Of Law Of The Case.**

Creech argues that the statutory aggravating circumstance "propensity to commit murder," I.C. § 19–2515(h)(8), is unconstitutionally vague, was not proven beyond a reasonable doubt, and was unconstitutionally applied by the district court. This issue has previously been decided by this Court in this case and is therefore barred by the doctrine of law of the case.

In *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983), Creech argued that the aggravating circumstance "propensity to commit murder," pursuant to former I.C. § 19–2515(f)(8), was unconstitutionally vague, and challenged the district court's findings with respect to this circumstance. The Court held that this aggravating circumstance was not unconstitutionally vague:

> [W]e reject appellant's assertion that I.C. § 19–2515(f)(8) is impermissibly vague.... Under *Gregg [v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)] and *Furman [v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)], that statutory language does not fail as being facially unconstitutional.... Here, ... it cannot be asserted that the "propensity" circumstance could conceivably be applied to every murderer coming before a court in this state. We would construe "propensity" to exclude, for example, a person who has no inclination to kill but in an episode of rage, such as during an emotional family or lover's quarrel, commits the offense of murder.... [R]ather we construe the "propensity" language to specify that person who is a willing, predisposed killer, a killer who tends toward destroying the life of another, one who kills with less than the normal amount of provocation.

*Id.* at 370–71, 670 P.2d at 471–72. After holding that the "propensity to commit murder" circumstance is not unconstitutionally vague, we held that the district court's find-ing that this aggravating factor was present was correct:

> As applied to this particular defendant, the finding of propensity was clearly tailored and correct. The defendant here committed murder at least four times prior to the instant offense, twice in Idaho and also in Oregon and in California. There presently exist other pending charges of murder in the first degree against him.... Creech's own statements claim responsibility for approximately 40 murders. However vague the statutory language might be argued to be in the ordinary case (which assertion we have already rejected), nevertheless, as applied in the instant case, we hold beyond any doubt whatsoever that the appellant here has exhibited a propensity to commit murder which will probably constitute a continuing threat to society.

*Id.* at 371, 670 P.2d at 472.

This decision makes clear that the issue has been fully litigated and decided by the district court and by this Court, and it is therefore barred from being reviewed by this Court again.

**E. The Issue Whether The "Utter Disregard" Aggravating Circumstance Relied Upon By The District Court Is Unconstitutionally Vague And Overbroad Is Barred By The Doctrines Of Law Of The Case And Res Judicata.**

Creech argues that the "utter disregard for human life" aggravating circumstance, I.C. § 19–2515(h)(6), as applied in Idaho, is unconstitutionally vague. We hold that this issue has previously been decided in this case and in Creech's federal habeas corpus proceedings and is therefore barred from consideration by the doctrines of law of the case and res judicata.

Creech first raised this issue in *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983). We held in that case that pursuant to our decision in *State v. Osborn*, 102 Idaho 405, 631 P.2d 187 (1981), which held that the challenged statutory language was sufficiently narrow and limited to withstand a challenge of unconstitutional unfairness, likewise former I.C. § 19–2515(f)(6), now § 19–

2515(h)(6), is not unconstitutionally vague. *Id.* at 370, 670 P.2d at 471. In *Osborn,* the Court concluded that the phrase "utter disregard for human life" is "meant to be reflective of acts or circumstances surrounding the crime which exhibit the highest, the utmost, callous disregard for human life, i.e., the cold-blooded, pitiless slayer." *Osborn,* 102 Idaho at 419, 631 P.2d at 201.

Creech next presented this issue to the federal courts. The Ninth Circuit Court of Appeals held that the "utter disregard" aggravating circumstance was unconstitutionally vague, *Creech v. Arave,* 947 F.2d 873, 884–85 (1991). The United States Supreme Court reversed the Ninth Circuit on this issue, holding:

> Unlike the Court of Appeals, we do not believe it is necessary to decide whether the statutory phrase "utter disregard for human life" itself passes constitutional muster. The Idaho Supreme Court has adopted a limiting construction, and we believe that construction meets constitutional requirements.

*Arave v. Creech,* 507 U.S. 463, 471, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). The limiting construction to which the Supreme Court referred was our interpretation of this aggravating factor in *State v. Osborn, supra.* The Court therefore concluded that "the 'utter disregard' circumstance, as defined in *Osborn,* on its face meets constitutional requirements." 507 U.S. at 479, 113 S.Ct. 1534.

Thus, it is clear that this issue has been definitively decided, not only by this Court, but by the United States Supreme Court as well, and is not subject to review again.

**F. The District Court's Reliance On Elements Of The Offense As Statutory Aggravating Circumstances Did Not Violate Creech's Rights Under The Eighth And Fourteenth Amendments To The United States Constitution.**

■ Two of the five statutory aggravating factors listed by the district court in its findings imposing the death penalty, were as follows:

C. The murder was one defined as Murder of the First Degree by Section 18–4003, Idaho Code, subsection (c). The defendant was under a sentence of Murder of the First Degree at the time of his actions and with specific intent caused the additional death of David Jensen.

D. The murder was one defined as Murder of the First Degree by Section 18–4003, Idaho Code, subsection (e). The defendant with specific intent committed the murder of a fellow inmate while both were incarcerated in the Idaho State Correctional Institution.

Creech claims that the district court's listing of these aggravating circumstances did nothing more than repeat the definition of first degree murder contained in I.C. § 18–4003(c) and (e). Relying on *Collins v. Lockhart,* 754 F.2d 258 (8th Cir.1985), Creech argues that such action by the district court was constitutionally impermissible because imposing the death penalty on the basis of an aggravating circumstance that duplicates an element of the offense does not sufficiently narrow the class of persons eligible to receive the death penalty.

Creech initially made this argument to the Ninth Circuit Court of Appeals in 1991, but later retracted it when he became aware that *Collins v. Lockhart, supra,* had been overruled:

> Creech originally argued, relying on *Collins v. Lockhart,* 754 F.2d 258 (8th Cir.), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985), that the sentence was unconstitutional because these two aggravating factors were nothing more than elements of first degree murder. Acknowledging that *Collins* has been overruled, *see Perry v. Lockhart,* 871 F.2d 1384, 1392 (8th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 378, 107 L.Ed.2d 363 (1989), Creech no longer makes this argument.

*Creech v. Arave,* 947 F.2d 873, 882 n. 8 (9th Cir.1991).

In his reply brief, Creech acknowledges that *Collins v. Lockhart, supra,* was overruled by *Lowenfield,* but argues that *Lowenfield* is distinguishable from the present case because it involved a jurisdiction where the jury applies the law.

In *Perry v. Lockhart*, 871 F.2d 1384 (8th Cir.1989), the Eighth Circuit overruled *Collins* due to the Supreme Court's decision in *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). In *Lowenfield*, the petitioner argued that his death sentence should be vacated because the sole aggravating circumstance found by the jury at the sentencing phase was identical to an element of the crime of which he was convicted, first degree murder. In considering Lowenfield's argument, the Supreme Court noted that Louisiana had five statutorily established grades of homicide. The Court also noted that Louisiana had further narrowed its definition of first degree murder into five separate parts. In affirming the death sentence, the Court held that the use of "aggravating circumstances" was not an end in itself and that there was no reason why narrowing could not be performed in additional ways:

> It seems clear to us from this discussion that the narrowing function required for a regime of capital punishment may be provided in either of these two ways: The legislature may itself narrow the definition of capital offenses, as Texas and Louisiana have done, so that the jury finding of guilt responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase.

*Lowenfield*, 484 U.S. at 246, 108 S.Ct. 546.

The Court concluded that the Louisiana capital sentencing process was sufficiently narrow to meet constitutional requirements despite the duplication of an aggravating circumstance:

> Here, the "narrowing function" was performed by the jury at the guilt phase when it found defendant guilty of three counts of murder under the provision that "the offender has a specific intent to kill or to inflict great bodily harm upon more than one person." The fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition is no part of the constitutionally required narrowing process, and so the fact that the aggravating circumstance duplicated one of the elements of the crime does not make

this sentence constitutionally infirm. There is no question but that the Louisiana scheme narrows the class of death-eligible murderers and then at the sentencing phase allows for the consideration of mitigating circumstances and the exercise of discretion. The Constitution requires no more.

*Id.*

In the present case, although we have considered Creech's constitutional arguments based on *Collins v. Lockhart, supra,* even if such arguments were meritorious, they do not affect the constitutionality of this death sentence. The district court specifically found that three other statutory aggravating circumstances were present. I.C. § 19–2515(h) requires that only one aggravating circumstance be found beyond a reasonable doubt before the death penalty may be imposed. Thus, the death penalty would have been imposed regardless of the two findings which Creech argues duplicate the elements of the crime.

Creech's constitutional rights under the Eighth and Fourteenth Amendments of the United States Constitution have therefore not been violated.

**G. The District Court Did Not Erroneously Consider And Weigh Non Statutory Aggravating Circumstances Against Mitigating Circumstances.**

 Creech argues that the district court considered several aggravating factors that are not listed in I.C. § 19–2515(h) as the statutory aggravating factors. He claims that this is unconstitutional because he was not given notice of these factors before the sentencing hearing. Creech also argues that the aggravating factors found in I.C. § 19–2515(h) comprise an exclusive list, and that the statute permits consideration of only those factors found beyond a reasonable doubt. We find this argument to be without merit.

Creech first raised this issue in *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983). In that decision we noted that Creech's concern appeared to have arisen because of the

format chosen by the district court in drafting its findings. The 1982 findings were organized into separate sections entitled "Facts and Argument Found in Mitigation," "Facts and Arguments Found in Aggravation," and "Statutory Aggravating Circumstances Found Under Section 19–2515(f), Idaho Code." In that case, this Court held that the finding of aggravating circumstances other than those listed in I.C. § 19–2515(f), now 19–2515(h), was not error as long as at least one statutory aggravating circumstance was found by the district court beyond a reasonable doubt:

> The court is not limited as to the circumstances it may find in aggravation to those listed under I.C. § 19–2515(f). Thus, that section of the court's findings denominated "5. Facts and Arguments Found in Aggravation," although including circumstances not statutorily listed and not expressly found beyond a reasonable doubt, is not error. . . . Such an interpretation is not contradicted by I.C. § 19–2515(f), which merely lists the statutory aggravating circumstances, at least one of which must exist beyond a reasonable doubt if the ultimate sanction of death is to be imposed. . . . We hold that the list of aggravating factors set forth in the statute is not exclusive, albeit one of those factors must necessarily be found to exist beyond a reasonable doubt for a sentence of death to be upheld.

*Creech*, 105 Idaho at 369–70, 670 P.2d at 470–71.

In the present case, the district court in its 1995 findings also used a similar format: "4. Facts Found in Mitigation," "5. Facts Found in Aggravation," and "6. Statutory Aggravating Circumstances Found Under Section 19–2515(f), Idaho Code." In his brief in the present case, Creech lists the seven non-statutory aggravating factors found by the district court in 1995 of which he claims he did not have notice. Four of the factors are identical to ones found by the district court in 1982. Because this Court has already held that it was not error for the district court to weigh these aggravating factors, we will not address Creech's claim that his constitutional rights were violated because he had no notice of these factors.

The primary difference between the 1982 and 1995 findings under this section is that the court found that Creech had murdered Jensen with premeditation, that all of the weapons used in the murder were made by Creech, and that Creech "took breaks" during his beating of Jensen. The court noted that Creech had told different versions to different people with respect to what happened on that day, but based upon a review of the investigation and Creech's own statements, the court concluded that the murder was planned and executed by Creech. The court also found in its 1995 findings that Creech had confessed to killing others in the past, that several bodies had been found based upon information received from Creech, and that these murders resulted from either perceived personal affronts or personal gain. Finally, the court found that as Creech has aged his violent behavior has not declined and that only isolation has stopped the violence. We hold that Creech had more than adequate notice of the above findings. All of this information has been contained in the record since 1982, was produced by either Creech or one of Creech=s witnesses or was found in the presentence investigation report.

Furthermore, we have already held and reaffirm our holding that it was not error for the district court to weigh these non-statutory aggravating factors and that the list of statutory aggravating factors found in I.C. § 19–2515(h) is not exclusive. As long as the court finds at least one statutory aggravating factor beyond a reasonable doubt, it is free to consider and weigh other aggravating factors individually as well. *State v. Charboneau*, 116 Idaho 129, 150–51, 774 P.2d 299, 320–21 (1989). In the present case, the district court found beyond a reasonable doubt three such aggravating factors: (1) that Creech has been convicted of first degree murder on three separate occasions prior to the present offense pursuant to I.C. § 19–2515(h)(1); (2) that Creech exhibited an utter disregard for human life pursuant to I.C. § 19–2515(h)(6); and (3) that Creech, by his prior conduct or conduct in the commission of the present murder, exhibited a propensity to commit murder and will probably be a continuing threat to society pursuant to I.C.§ 19–2515(h)(8). Thus, because the district court

formally found these statutory aggravating factors, and that these findings were not outweighed by mitigating circumstances, we hold there has been no error.

### H. The Issue Whether Idaho's Death Sentence Statute Mandates A Sentencing Formula Which Is In Violation Of The Eighth Amendment Thus Entitling Creech To A New Sentencing Hearing Is Barred By The Doctrine Of Res Judicata.

■ I.C. §19–2515(c) provides:

Where a person is convicted of an offense which may be punishable by death, a sentence of death shall not be imposed unless the court finds at least one (1) statutory aggravating circumstance. Where the court finds a statutory aggravating circumstance the court *shall* sentence the defendant to death *unless* the court finds that mitigating circumstances which may be presented are sufficiently compelling that the death penalty would be unjust.

(Emphasis added.) Creech argues that this statute violates the Eighth Amendment because it is too rigid. Specifically, Creech claims that I.C. § 19–2515(c) is unconstitutional because it removes an "individualized determination" and a "moral response" in sentencing.

This identical issue was raised by Creech before the Ninth Circuit Court of Appeals in *Creech v. Arave*, 947 F.2d 873 (9th Cir.1991). In that case, the Ninth Circuit, relying on *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), specifically held that I.C. § 19–2515(c) is constitutional. *Creech*, 947 F.2d at 886. The United States Supreme Court did not grant certiorari on this issue. Thus, the Ninth Circuit having found Idaho's sentencing statute constitutional, reconsideration of this issue is barred by the doctrine of res judicata.

### I. The Issue Whether Idaho's Death Penalty Scheme Violates The Sixth Amendment To The United States Constitution By Lack Of Jury Participation Is Barred By The Doctrines Of Law Of The Case And Res Judicata.

■ Creech argues that the Sixth Amendment to the United States Constitu-

tion guarantees a jury trial on the existence of aggravating circumstances when a potential death sentence is involved. Creech claims that I.C. § 19–2515 links an enhanced punishment to specifically enumerated factual findings and then usurps the jury's fundamental role in deciding whether the facts have been established.

This issue was also previously raised by Creech and decided by this Court and the Ninth Circuit Court of Appeals. *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983), stated:

We hold that there is no federal constitutional requirement of jury participation in the sentencing process and that the decision to have jury participation in the sentencing process, as contrasted with judicial discretion sentencing, is within the policy determination of the individual states.... [W]e would agree with our legislature that judicial control of the sentencing process is preferable to jury participation, in that the constitutionally mandated consistency of result is more probable in the case of judicial sentencing.

*Id.* at 373, 670 P.2d at 474.

In *Creech v. Arave*, 947 F.2d 873 (9th Cir.1991), the Court of Appeals similarly held that Creech's argument had no merit: "Creech's argument has been fully rejected by the Supreme Court.... We therefore find that ... Creech had no constitutional right to a jury trial on the existence of aggravating circumstances." 974 F.2d at 885–86.

Thus, we decline to reconsider this issue and the death sentence is affirmed.

### J. The District Court Considered Creech's Mental Capacity In Imposing The Death Sentence.

■ Creech argues that the district court erred because it refused to consider Creech's reduced mental capacity when weighing aggravating factors against mitigating factors. We find this argument to be without merit.

At his 1995 resentencing hearing, Creech produced Dr. Brown, a psychologist, who testified that there was "probably" a biological component to Creech's violent personality. However, Dr. Brown further testified that this did not mean Creech was incompetent to stand trial nor that it had any bearing on whether Creech should be held criminally responsible for his actions.

That the district court considered this evidence is clear from a review of the court=s written findings. Under the section entitled "Facts Found in Mitigation," the court specifically found:

There may be a biological reason for the defendant to be predisposed to violence. There is no independent factual basis presented for this theory as it relates to this individual. However, for the purpose of sentencing this court will accept that the defendant may be biologically predisposed to violence.

In his reply brief, Creech acknowledges that while the district court did find a genetic component to Creech's behavior, there was no discussion in the court's findings of the psychological and psychiatric testimony at the original proceedings, and therefore it is unclear whether this mitigating evidence was properly considered. We also find this argument to be without merit.

In *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983), Creech previously argued that the district court failed to consider his reduced mental capacity at the time of the murder as a mitigating circumstance. The district court's findings from that sentencing hearing contained no mention whatsoever of Creech's mental capacity, and therefore, Creech claimed that since the court did not mention such evidence, it must not have considered it. We rejected Creech's argument, holding that a sentencing court is not required to specifically list each and every piece of evidence it may have considered in mitigation:

While I.C. § 19–2515(d) directs that "the court shall set forth in writing any mitigating factors considered," the practical effect of that statute is not to require the judge to set out each and every circumstance *presented* to him in mitigation, but rather, the plain language of the statute, we hold, requires the judge to list that evidence which, in his capacity as a fact finder, he has found to be valid, competent, and pertinent to the issue of whether the death penalty should be imposed. To accept appellant's contention would result in a requirement that the judge set forth in writing every consideration that has been raised or has occurred to him as a potential factor in mitigation, a requirement we deem to be unworkable, impossible, and not to be gleaned from the statutory language.

*Id.* at 372, 670 P.2d at 473 (quoting I.C. § 19–2515(d)). (Emphasis in original.)

Thus, we hold that although the district court in its findings presently before the Court did not specifically list or mention the evidence adduced at Creech's original sentencing with respect to his mental capacity, this does not mean that it was not considered by the court. Further, the fact remains that the court did consider the testimony of Dr. Brown in the 1995 resentencing and expressly found Dr. Brown's conclusion that Creech may be genetically predisposed to violence to be a mitigating factor and so stated in its findings. A reversal of the death sentence is therefore not required.

**K. Due To The 1994 Amendment To I.C. § 19–2827, The Death Sentence In This Case Will Not Be Reviewed In Terms Of Either Excessiveness Or Proportionality.**

■ Creech argues that his death sentence is excessive and disproportionate to the crime he committed and requests that the sentence be vacated and the case remanded for resentencing.

Idaho Code Section 19–2827 provides for an automatic review by this Court of all death sentences imposed by the trial courts in this state. Prior to 1994, I.C. § 19–2827(c)(3) required the Court to determine whether a sentence was "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." I.C. § 19–2827(c)(3) (1977). However, the 1994 Idaho Legislature amended this section eliminating the requirement

that the Court conduct a proportionality review. *See* 1994 Idaho Sess. Laws, ch. 127, §1, p. 285. After the amendment, I.C. § 19–2827(c)(3) now requires that the Court determine "[w]hether the sentence of death is excessive." I.C. § 19–2827(c)(3) (1994).

In *State v. Fields,* 127 Idaho 904, 908 P.2d 1211 (1995), in discussing the 1994 amendment, we noted that prior to the amendment excessiveness was decided by determining whether the penalty was disproportionate to the penalty imposed in similar cases. *Id.* at 918, 908 P.2d at 1225. Thus, the Court held that the elimination of the proportionality language from I.C. § 19–2827(c)(3) rendered the term "excessive" in that section meaningless. *Id.* We therefore declined to undertake any review of whether the sentence was excessive other than to conduct an independent review of whether the district court's findings and weighing of aggravating and mitigating circumstances were supported by the record. *Id.* We reaffirmed this holding in *State v. Sivak,* 127 Idaho 387, 393, 901 P.2d 494, 500 (1995).

Thus, in the present case, we decline to consider whether Creech's death sentence is excessive. We have already held that the district court's findings weighing the aggravating and mitigating factors surrounding the crime are supported by the record. The death sentence is therefore affirmed.

### POST–CONVICTION ISSUES

L. Whether the district court erred in denying Creech's petition for post-conviction relief.

1. Ineffective assistance of counsel claims.

 a. Whether the investigation and performance of trial counsel at the 1995 resentencing was deficient with respect to mitigating evidence involving Creech's background and personal history.

 b. Whether trial counsel's preparation and presentation of evidence relating to mental health issues was deficient.

 c. Whether trial counsel's performance was deficient because he did not challenge the admission of prior convictions.

 d. Whether trial counsel's performance was deficient because he failed to spend sufficient time with Creech.

 e. Whether trial counsel failed to protect Creech's rights regarding communications with mental health professionals.

 f. Whether trial counsel failed to raise or preserve meritorious issues in appellate proceedings.

 g. Whether trial counsel's performance was deficient because he should have moved to withdraw as attorney of record.

 h. Whether trial counsel's performance was deficient in preparing Creech's motion to withdraw his guilty plea.

2. Whether Creech should have been allowed to withdraw his guilty plea.

3. Whether Creech was denied equal protection under the Fourteenth Amendment to the United States Constitution.

4. Whether the district court abused its discretion by denying Creech a continuance of hearing on the petition for post-conviction relief to allow Creech to present further evidence.

The State raises the following additional issue on appeal:

M. Whether attorney fees and costs should be awarded to the State on the post-conviction relief issues.

**L. The District Court Did Nor Err In Denying Creech's Petition For Post Conviction Relief.**

 **1. Ineffective assistance of counsel claims.**

Creech raises several arguments claiming he was denied effective assistance of counsel with respect to his 1995 resentencing, in violation of the Sixth Amendment to the United States Constitution. We find no merit in Creech's arguments.

In order to prove ineffective assistance of counsel, Creech must satisfy the two-prong test set forth by the United States

Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, Creech must prove that counsel's performance was deficient. 466 U.S. at 687, 104 S.Ct. 2052. With respect to this performance component, the Court stated:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id.* at 689, 104 S.Ct. 2052. Thus, the Court held that an evaluating court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Second, Creech must prove that his counsel's deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052. This requires a showing that defense counsel's errors were so egregious that the defendant was deprived of a fair trial. *Id.* With respect to this prong of the test, the Supreme Court held as follows:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694, 104 S.Ct. 2052. *See also State v. Fields,* 127 Idaho 904, 912, 908 P.2d 1211, 1219 (1995); *State v. Pratt,* 125 Idaho 546, 568, 873 P.2d 800, 822 (1993).

**a.** ***Creech has failed to prove that the investigation and performance of trial counsel at the 1995 resentencing was deficient with respect to mitigating evidence involving Creech's background and personal history.***

■■■■■ Creech first challenges the death sentence on the ground that the sentencing procedures were inadequate. In support of this assertion, Creech makes reference to testimony and statements of his former attorneys, John Adams and Rolf Kehne, in which they allegedly stated that the investigation, preparation and presentation of mitigating evidence (provided by themselves), were wholly inadequate. Next, Creech simply asserts that Kehne and Adams failed to investigate his personal history and thus did not supply the sentencing court with ample mitigating evidence, thereby violating his Sixth Amendment right to effective assistance of counsel.

Under the *Strickland v. Washington* test, as adopted in *State v. Fields,* 127 Idaho 904, 908 P.2d 1211 (1995), the first question is whether the assistance rendered was deficient. 466 U.S. at 687, 104 S.Ct. 2052. Creech does not detail the deficiencies made by his counsel of which he complains. In fact, Creech has never stated what was *not* provided to the sentencing court for consideration. Creech testified at the resentencing. His brother-in-law testified about family history and Creech's good points. His sister testified extensively regarding Creech's family history, head trauma, and general disposition as a child and adult. Creech's expert witness, Dr. Brown, testified that he reviewed Creech's prison psychological and psychiatric records, descriptions of the crime scene, the presentence investigation report, Oregon State Hospital records, results from I.Q. and psychological tests, hospital records, prison disciplinary reports, and personal history information. All of these documents were supplied to Dr. Brown by Creech's counsel. Additionally, Dr. Brown testified as to the genetic, biological and mental condition of Creech. Further, Creech's presentence investigation report contained over thirty pages of personal history from early childhood to 1995. Creech has not identified what other information should have been included. Thus, we hold that there is no objective information provided by Creech, or obvious omissions in the records and transcripts in this case which would support a finding that Creech's counsels' performance was deficient in investigating Creech's personal history.

Moreover, in its memorandum decision denying Creech's petition for post-conviction relief, the district court ruled that additional

mitigating evidence or information regarding the victim would not have changed the outcome of the criminal case:

> Accepting for purposes of this decision the testimony elicited at the post conviction relief hearing as to what evidence Kehne could have or should have secured to give as many mitigating factors as possible, this court's firm belief is that the outcome of the sentencing would not have been changed. This court's interest was (1) whether Creech had killed Jensen; (2) was Creech predisposed to take human life and (3) was he incapable of comprehending the outcome of his actions. The childhood history of Creech was incidental to this court; the possibility of a biological predisposition was listed as a mitigating factor by this court; and the suggestion that the victim was a punk was also listed. However, when it is all said and done this court determined that Thomas Eugene Creech was an adult male of at least normal intelligence who was able to comprehend the results of his actions and did with specific intent kill another inmate while imprisoned as a result of an earlier conviction. The second prong of the ineffective assistance test has not been met.

Creech speculates that additional information may have helped. However, the district court clearly stated in its findings and conclusions imposing the death penalty that all of the mitigating factors combined did not outweigh each individual aggravating factor. The district court's denial of Creech's petition for post-conviction relief is therefore affirmed.

### b. Creech has failed to prove that the preparation and presentation of evidence by counsel relating to mental health issues was deficient.

Creech argues that his attorneys failed to present mitigating evidence regarding mental health issues, including sexual abuse victimization and heredity issues. We find this argument to be without merit. Creech was interviewed by Dr. Brown, a psychologist, who gave testimony at the resentencing concerning mental health and heredity issues. Creech's sister also testified at the resen-

tencing and stated that there was no sexual abuse in the family. Further, mental health issues were extensively covered at the 1982 sentencing. Creech does not state exactly what mitigating evidence was omitted by his trial counsel. Thus, we hold that Creech has failed to satisfy his burden under the *Strickland* test of proving that his counsel's performance was deficient and that but for the deficiencies the outcome would have been different. As previously noted, the district court expressly stated that the outcome of the resentencing hearing would not have changed with additional mitigating evidence.

### c. The issue whether trial counsel's performance was deficient because he did not challenge the admission of prior convictions is waived.

Creech makes a conclusory statement that his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated by the unopposed admission of his prior convictions in the penalty phase of this case. He also claims that he was denied effective assistance of counsel under the Sixth Amendment because his attorney objected only to the admission of the presentence report and did not specifically challenge those prior convictions on constitutional grounds.

We decline to address the merits of this issue. Creech cites no legal authority to support his claim that his due process rights were violated. Failure to provide legal citations waives the issue. I.A.R. 35(a)(6); *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). He also fails to cite to any decision, record, transcript or any other documentation to support his statement that his prior convictions were unconstitutional. Finally, Creech cites to no authority and provides no argument to support his claim that he was denied effective assistance of counsel with respect to the admission into evidence of the fact of his earlier convictions.

### d. Creech has failed to prove that trial counsel's performance was deficient because he did not spend sufficient time with Creech.

Creech next claims that he was denied effective assistance of counsel because

Kehne did not spend a sufficient amount of time with him and that this affected the outcome of both the guilt and penalty phases of the case. We find this argument to be without merit.

With respect to the guilt phase of this case, Creech changed his plea from not guilty to guilty over the objections of Kehne. Further, Creech specifically stated to the court at the August 28, 1981 hearing at which he changed his plea, that he had sufficient time to discuss the matter with Kehne, that Kehne advised Creech to his satisfaction of his rights, defenses, and the possible consequences of pleading guilty, that he wished to change his plea to guilty against the advice of Kehne and that he was satisfied with Kehne's representation in the matter. The Ninth Circuit Court of Appeals also found that Creech was uncooperative and unwilling to listen to the advice of his counsel:

> [A]ny omission on Kehne's part was not the result of his incompetence as counsel. Creech simply did not allow his counsel to inform him of the elements of the offense or possible defenses. The transcript of the August 28 [1981] plea hearing shows that Kehne explicitly told the court in Creech's presence that the guilty plea was against his advice. As the district court properly noted, "a defendant may not be forced to abide by the advice of counsel." [Footnote omitted]. Furthermore, at that hearing Creech told the court that he had discussed the plea with counsel, that he believed he had sufficient time to discuss his plea with counsel, that he was satisfied with his attorney's representation, and that he understood that by pleading guilty he was giving up any defense to the charge.

*Creech v. Arave,* 947 F.2d 873, 877 (9th Cir. 1991).

With respect to the penalty phase of the case, Creech offers no facts which would support a finding that the sentence would have been less than death had he had spent more time with his attorney.

Thus, Creech has failed to prove that he was denied effective assistance of counsel in this respect.

e. *The issue whether trial counsel failed to protect Creech's rights regarding communications with mental health professionals is waived.*

■ Creech claims that at the sentencing hearing, Kehne allowed Creech to make statements against his interest which contributed to the sentences imposed. Creech claims that these statements resulted in part from trial counsel's failure to adequately advise Creech of his rights during interviews with defense mental health experts.

We again decline to address this issue as Creech has made only conclusory assertions and wholly fails to cite to any legal authority, the record or the transcript to support this allegation. There is no indication of which rights Creech should have been apprised nor what statements were made against his interest. The issue has thus been waived. I.A.R. 35; *Zichko,* 129 Idaho at 263, 923 P.2d at 970.

f. *The issue whether trial counsel failed to raise or preserve meritorious issues in appellate proceedings is waived.*

Creech claims that his counsel did not raise all the appropriate issues in the direct appeal and therefore, he has been prejudiced in obtaining appellate relief. He also claims that a corollary issue is whether Kehne should have advised the district court in his motion to withdraw that Creech's strongest ground for appeal was ineffective assistance of counsel.

We decline to address this issue as Creech has provided no argument and does not even attempt to state what "appropriate issues" Kehne allegedly failed to raise in the direct appeal. Creech has again failed to cite to any legal authority, the record or the transcript to support his assertions. The issue has therefore been waived. I.A.R. 35(a)(6); *Zichko,* 129 Idaho at 263, 923 P.2d at 970.

g. *Creech has failed to prove that trial counsel's performance was deficient because he should have moved to withdraw as attorney of record.*

 Creech argues that Kehne should have withdrawn as his attorney after he entered his guilty plea because Kehne was a witness, thus creating a conflict. We find this argument to be without merit for two reasons.

First, after Creech entered his guilty plea, Kehne did move to withdraw as Creech's counsel, but the district court denied the motion. As this Court stated in Creech's first post-conviction relief appeal:

> Defendant was represented by counsel prior to the hearing when he entered his guilty plea and his counsel was present at the hearing. Although defense counsel asked to be dismissed from the case because defendant refused to comply with his advice, the district court refused so that defendant could continue to have the advice of counsel.

*State v. Creech,* 109 Idaho 592, 596, 710 P.2d 502, 506 (1985).

Second, other than claiming there was a "void in the record," Creech has failed to show how he was prejudiced by the continued representation of Kehne. This Court previously held that it was not manifestly unjust to let the guilty plea stand. *Id.* at 597, 710 P.2d at 507. Creech has not shown how that decision would have differed had Kehne testified in his behalf. Thus, Creech has not satisfied his burden of proving ineffective assistance of counsel under the *Strickland* test.

h. *The issue whether trial counsel's performance was deficient in preparing Creech's motion to withdraw his guilty plea is waived.*

Creech claims that Kehne did not properly prepare the motion to withdraw his guilty plea. Creech argues that Kehne should have presented the best evidence available, the testimony of the participants in the original plea hearing, the judge, the prosecutor and Kehne.

We decline to address this issue as Creech makes only conclusory statements and fails to state how he was prejudiced. There is no argument as to how the outcome of these proceedings would have differed had Kehne acted as a witness on Creech's behalf and presented testimony of the judge and prosecutor. Creech has also failed to provide any legal authority for his argument. This issue is therefore waived. I.A.R. 35(a)(6); *Zichko,* 129 Idaho at 263, 923 P.2d at 970.

2. **The issue whether Creech should be allowed to withdraw his guilty plea is barred by the doctrine of res judicata.**

 After Creech was originally sentenced to death in 1983, he filed a motion to withdraw his guilty plea. After an evidentiary hearing, the district court denied the motion. This Court affirmed the district court, holding that the record was sufficient to find that allowing the guilty plea to stand would not be manifestly unjust. *State v. Creech,* 109 Idaho 592, 597, 710 P.2d 502, 507 (1985).

In 1991, the Ninth Circuit Court of Appeals remanded the case for resentencing to allow the introduction of additional mitigating evidence. *Creech,* 947 F.2d at 881. That resentencing hearing was originally scheduled for December 1993. However, due to Creech's claims of unpreparedness and counsel's conflicting schedule, the hearing was vacated six times until it finally commenced in March 1995. In April 1994, prior to the resentencing hearing, Creech filed another motion to withdraw his guilty plea. The district court denied Creech's motion, ruling that it was barred by res judicata since the district court and this Court had previously ruled on it.

On this appeal, Creech argues that he was denied due process when he was prevented from litigating his motion to withdraw his guilty plea filed before the resentencing in March 1995. He claims that raising this issue is not barred by res judicata because the district court and this Court previously examined the issue under the standard for post-sentence withdrawals in 1985 (whether a manifest injustice is shown), whereas this motion is to be examined under a pre-sen-

tence standard which is less stringent than the manifest injustice standard.

We find Creech's argument to be wholly without merit. The timing of the filing of Creech's second motion to withdraw in this case is irrelevant and does not create a new issue simply because it was coincidentally filed and decided prior to the resentencing due to scheduling delays. Timing will not allow a second review of the same issue. As stated above, the purpose of the remand was not to relitigate all issues, but rather to provide Creech with an opportunity to introduce additional mitigating evidence. Thus, we reject Creech's assertion that a new issue is before the Court as the guilty plea issue had been fully litigated and was completed. The claim is barred by res judicata.

In the statement of facts section of his opening brief, Creech makes a passing reference to his relationship with former Ada County Sheriff, E.C. "Chuck" Palmer, and makes a vague assertion that Palmer improperly coerced Creech into pleading guilty. Creech states that after he was charged with Jensen's murder he was housed at the Ada County Jail and that he trusted Sheriff Palmer. Creech then states that while he was at the Ada County Jail: "The Sheriff discussed religious subjects with Creech, urging him to atone for his crimes. *Apparently this lead [sic] Creech to plead guilty.*" (Emphasis added). This is the only reference to Sheriff Palmer in Creech's entire brief and the only reference to any supposed wrongdoing. Creech makes no legal argument with respect to this claim, nor does he provide any citations or references to the record or transcript. Thus, Creech's obscure reference to Palmer in the introductory portion of his brief will not be addressed. I.A.R. 35(a)(6); *Zichko,* 129 Idaho at 263, 923 P.2d at 970.

3. **Creech has failed to prove that he was denied equal protection under the Fourteenth Amendment to the United States Constitution.**

■ Creech argues that he was denied equal protection because he was prosecuted in Ada County, a county that had sufficient funds to seek the death penalty, as opposed to a smaller county which would not have

sought the death penalty for financial reasons. Creech seems to argue that the imposition of the death penalty in larger counties is not based upon a valid justification, but rather shows disparate treatment of two classes of litigants, persons convicted of first degree murder in small counties and persons convicted of first degree murder in large counties. We find this argument to be without merit.

■ In determining whether there has been an equal protection violation, we must first identify (1) the classification which is being challenged, and (2) the standard under which the classification will be reviewed. *State v. Beam,* 115 Idaho 208, 211, 766 P.2d 678, 681 (1988). Second, we must determine whether the appropriate equal protection standard has been satisfied. *Id.* Unless the party is a member of a suspect class, *i.e.,* those classes which have historically been encumbered with disabilities or have been subjected to unequal treatment due to race, religion, sex or alienage, which requires strict scrutiny, we need only find that the classification be rationally related to a legitimate state interest. *Davis v. Moran,* 112 Idaho 703, 706–07, 735 P.2d 1014, 1017–18 (1987) (citing *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)).

We hold that Creech has failed to establish that he is a member of a suspect class. Thus, the rational relationship analysis applies. In this case the State is the prosecutor recommending that the death penalty be imposed and the district court deciding that the death penalty would be an appropriate punishment. In both cases, this act is within the sound discretion of an officer of the court who need only have a legitimate state purpose in seeking or imposing the death penalty. The legitimate purpose stems from the first degree murder itself, and the weighing of aggravating and mitigating circumstances. Creech has thus failed to establish that he was denied equal protection.

4. **The district court did not abuse its discretion in denying Creech's request for a continuance of the post-conviction relief hearing.**

■ Creech argues that the district court abused its discretion by denying his request

for a continuance of the post-conviction hearing. He claims that had he been given more time, he would have collected additional "empirical evidence" to support his equal protection claim that large counties impose the death penalty more than small counties for financial reasons. We find this argument to be wholly without merit.

 The decision to grant or deny a motion for a continuance is vested within the sound discretion of the trial court. *State v. Tapia,* 127 Idaho 249, 255, 899 P.2d 959, 965 (1995). We hold that the district court did not abuse its discretion in denying Creech's last request for a continuance. The hearing, originally scheduled for August 7, 1995, was vacated and continued four times, and was not actually held until October 1, 1996, approximately fourteen months later. We conclude that counsel for Creech had more than enough time to collect any empirical data he may have sought. In any event, because the equal protection issue was without merit, additional time to prepare this argument would not have resulted in a different decision by the district court. Thus, the denial of Creech's request for a continuance is affirmed.

### M. The State Is Not Entitled To An Award Of Attorney Fees And Costs On The Post–Conviction Issues.

The State claims that it is entitled to an award of attorneys and costs pursuant to I.C. § 12–121 and I.A.R. 40 and 41. The State argues that the issues presented by Creech on his appeal from the denial of his post-conviction petition are frivolous, barred by res judicata, lack citation to the record or legal authority, and present arguments contrary to well-settled state and federal case law.

While we agree with the State that certain of Creech's issues presented in his petition for post-conviction relief are barred by res judicata, lack citation to legal authority and the record, and merely present conclusory statements, this Court has never assessed attorney fees and costs against a capital defendant and we decline to do so now. Such a decision could have a chilling effect on defense counsel, virtually all of whom are public defenders or court appointed. When a defendant is faced with the death penalty, the most serious of punishments, he or she should be allowed to exhaust every arguably meritorious possibility for relief. Thus, we hold that the State is not entitled to an award of attorneys fees and costs.

### IV.

### CONCLUSION

For all of the foregoing reasons, we affirm the judgment of conviction, the imposition of the death sentence and the denial of Creech's petition for post-conviction relief. The State's request for attorney fees and costs on the post-conviction appeal is denied.

TROUT, C.J., and JOHNSON, SCHROEDER and WALTERS, JJ., concur.